Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Wednesday, May 30, 2007 4:10:20 PM

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:                              )
                                    )
JOHN PATRICK BALL                   )   CASE NO. 06-1002
                                    )
    Debtor.                         )

### MEMORANDUM OPINION

On December 21, 2006, this court granted John Patrick Ball (the "Debtor") permission to sell a condominium, located at 2 Waterfront Plaza, Morgantown, West Virginia, (the "Condominium") that he claims to own jointly with is wife, Anita Ball, to Rita and Stephen Tanner for the sum of $885,000.  The West Virginia University Foundation, Inc. (the "Foundation"), Ward D. Stone,[1] and the United States Trustee (the "USTE"), all object to the Debtor's motion to approve the disbursement of the net sale proceeds to the extent that Ms. Ball would immediately be paid that portion of the sale proceeds that represent her purported one-half interest in the Condominium  (about $222,000).

Pursuant to an Order entered by this court on January 31, 2007,[2] the court converted the objections to Debtor's motion into motions for a preliminary injunction under Fed. R. Bankr. P. 7065 and 9014.  Consistent with that Order, the Foundation and Mr. Stone argue that a preliminary injunction should be issued by the court to prevent sale proceeds being paid to Ms. Ball on the basis that Ms. Ball's

---

[1] Ward D. Stone is the court-appointed administrator for the estates of Vivian Davis Michael, Gladys G. Davis, and Earl L. Elmore, all of whom are deceased.

[2] The Order entered by the court was consistent with a Memorandum Opinion issued contemporaneously. *In re Ball*, No. 06-1002, 2007 Bankr. LEXIS 274 (Bankr. N.D.W. Va. Jan. 31, 2007)

1

acquisition of an ownership interest in the Condominium was fraudulent as to present and future creditors under W. Va. Code § 40-1A-1, et seq. The USTE argues that at least $44,300 of the proceeds should not be paid over to Ms. Ball on the grounds that she is liable to the Debtor's bankruptcy estate in that amount under a claim for unjust enrichment. For sundry reasons, the hearing on the motions for a preliminary injunction were continued until March 28, 2007, and post hearing briefs were submitted by April 17, 2007, at which time the court took the matter under advisement. For the reasons stated herein, the court will deny the motions for a preliminary injunction.

## I. BACKGROUND

Before becoming an attorney in 1963, the Debtor was friendly with Vivian D. Michael and Gladys G. Davis, sisters, in an on-going relationship dating back to 1952. After the Debtor was admitted to practice, they were among his first clients, and he assisted them generally in landlord-tenant matters. In the course of the Debtor's personal and professional relationship with Ms. Michael and Ms. Davis, he prepared their wills.

When the Debtor's grandmother died, she left him a life estate in a house located at 38 Maple Avenue in Morgantown, West Virginia, with the remainder interest in the Debtor's children. The Debtor and Ms. Ball sought to remodel the house, but were unable to obtain a mortgage secured by the Debtor's life estate interest. The Debtor did, however, manage to obtain a 20-year loan to effectuate the remodeling project by using his various stock interests as collateral. One of the Debtor's neighbors was Earl L. Elmore, with whom the Debtor formed a close friendship. The Debtor also prepared Mr. Elmore's will.

Regarding the wills that the Debtor prepared for Ms. Michael and Ms. Davis, both left all tangible personal property, including personal effects, household goods, and jewelry to Ms. Ball, and Ms. Michael bequeathed an automobile to the Debtor. The total value of those gifts was $64,000. After Ms. Michael died, the Debtor assisted Ms. Davis in changing the beneficiary of an annuity from her deceased sister to the Debtor's two adult children. After Ms. Davis's death, the Debtor's children received $487,783 from that annuity. Additionally, the Debtor was named the executor of both Ms. Michael's and Ms. Davis's wills, and the stated compensation for him as executor was 7.5% of the total gross estates at a time when the generally accepted maximum charge was 5%. As executor, the Debtor received $785,966 in fees from Ms. Michael's estate, and $837,362 from Ms. Davis's estate. Moreover, the wills also gave the Debtor

the right to oversee funds given to the Foundation – with an associated fee of 1% of the market value of the funds. The Debtor received a total of $336,889 from the Foundation based on that oversight fee.

Similarly, the will that the Debtor prepared for Mr. Elmore appointed the Debtor as executor of the estate and authorized him to receive compensation at the rate of 7.5% of the total gross estate. Mr. Elmore died in 2003 leaving an estate valued at $1,388,579. Mr. Elmer also provided that the bulk of his estate would be paid to the Foundation, and he allowed the Debtor to set the annual fee that the Debtor would charge for overseeing that gift. The will suggested that the fee could be 1% of the gross assets of the funds.

On December 6, 2002, the State of West Virginia Office of Disciplinary Counsel (the "ODC") sent the Debtor a letter advising him that it had opened an investigaton regarding the Debtor's role in the preparation of Ms. Michael's and Ms. Davis's wills. The ODC requested that the Debtor supply it with information concerning his involvement with Ms. Michael and Ms. Davis, and asked specific questions regarding the fees that he charged to administer their estates.

On December 5, 2003, the Debtor and Ms. Ball purchased the Condominium – held as joint tenants with a right of survivorship – by financing 100% of the purchase price of $665,135 with Centura Bank. The loan was in the amount of $700,000, and part of the reason that the Centura Bank was willing to finance an amount in excess of the purchase price was that the Debtor had promised to pay Centura Bank the equity from the eventual sale of his home at 38 Maple Avenue. Consistent with that promise, the Debtor had his children – the holders of the remainder interests in 38 Maple Avenue – convey that interest to him so that he held title to the property in fee simple. Subsequently, on May 10, 2004, the Debtor executed a contract for sale on the Maple Avenue property to unrelated third parties. The gross sales price was $325,000, and of that amount the Debtor received about $323,000 at closing. The proceeds were placed in a bank account that the Debtor held jointly with Ms. Ball, and on June 25, 2004, Ms. Ball wrote a check for $300,000 to Centura Bank to pay down the principal amount owed on the Condominium.

Meanwhile, on June 5, 2004, the ODC "ordered" its Statement of Charges against the Debtor alleging numerous ethical violations with respect to his preparation and administration of the estates of Ms. Michael, Ms. Davis, and Mr. Elmore. The Statement of Charges, however, was not "issued" until June 22, 2004. According to Lawrence Lewis, the chief lawyer of disciplinary counsel, June 5th was the date

3

when the investigative panel would have met, and June 22 was the date when the chairperson of the investigative panel signed the Statement of Charges. After that time, Mr. Lewis had 60 days to follow-up with the West Virginia Supreme Court of Appeals, and Mr. Lewis waited until sometime after the first of July to undertake that task in consideration of the Fourth of July holiday. Additionally, Mr. Lewis had heard that the Debtor was retiring from the practice of law on July 1, 2004, and he wanted to wait until after the Debtor changed his status with the West Virginia State Bar before officially serving him with the Statement of Charges. According to Mr. Lewis, formal charges were in the process of being served, but had not yet been served, on the Debtor as of June 25, 2004 – the date that Anita Ball wrote the $300,000 check to Centura Bank. Mr. Lewis did, however, inform Morgan Palmer Griffith, counsel to the Debtor, sometime in June of 2004 that the Statement of Charges would be issued.

Based on the Statement of Charges, the West Virginia Supreme Court of Appeals eventually determined that the Debtor drafted three wills in which he gave himself excessive fees as executor, drafted two wills that improperly conveyed property to himself and his wife, and assisted in changing a client's annuity to benefit his adult children. As a result, the Supreme Court of Appeals determined that the Debtor violated West Virginia Rule of Professional Conduct 1.5(a) (prohibition on excessive fees); 1.7(b) (prohibiting representation of a client when that representation is materially limited by the lawyer's own interests); 1.8(c) (prohibition on preparing a will that gives the lawyer or a relative of the lawyer a substantial gift from the client); and 8.4(a) (prohibition against attempting to violate the Rules of Professional Conduct). Based on these ethical violations, the Supreme Court of Appeals ordered full restitution of all unethically obtained funds, which was later determined to be $2,978,848 as of July 17, 2006. On October 31, 2006, the Debtor filed his Chapter 11 bankruptcy petition.

## II. DISCUSSION

The Foundation and Mr. Stone assert that Ms. Ball's interest in the sale proceeds from the Condominium should be placed in escrow by the court on the grounds that Ms. Ball may be liable to the Debtor's bankruptcy estate on a state law fraudulent conveyance cause of action under W. Va. Code § 40-1A-4(a)(1). Mr. Stone and the Foundation assert that when the court balances the relative harms to the parties, and weighs the public interest, the court should grant the preliminary injunction. The USTE argues that Ms. Ball is liable to the bankruptcy estate based on her receipt of $44,300 in property from the

4

estate of Ms. Davis under a theory of unjust enrichment. The West Virginia Supreme Court of Appeals ordered that the Debtor pay restitution in that amount, and, according to the USTE, it is inequitable that Ms. Ball should retain the value of that property at the expense of other creditors of the Debtor's estate. Like the Foundation and Mr. Stone, the USTE contends that, after balancing the relative harms, the public interest, and the liklihood of success on the stated cause of action, cause exists to order an escrow of the proceeds otherwise payable to Ms. Ball from the sale of the Condominium.

The Court of Appeals for the Fourth Circuit requires that a court weigh four factors in determining whether a preliminary injunction should be issued: "1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is not granted; 2) the likelihood of harm to the defendant if the preliminary injunction is granted; 3) the likelihood that plaintiff will succeed on the merits; and 4) the public interest." *Hughes Network Sys. v. Interdigital Communications Corp.*, 17 F.3d 691, 693 (4th Cir. 1994).

These four factors are not equally weighted – "[t]he 'balance of hardships' reached by comparing the relevant harms to the plaintiff and defendant is the most important determination . . . ." *Id.* If the balance tips "decidedly" in the favor of the moving party, a preliminary injunction would be appropriate if the moving party "has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 813 (4th Cir. 1991). On the other hand, if the balance of the harms tips away from the moving party, the moving party must demonstrate its entitlement to a preliminary injunction with " 'a very clear and strong case,' " because " 'if there is doubt as to the probability of plaintiff's ultimate success on the merits, the preliminary injunction must be denied.' " *Id.* (citation omitted). In the absence of a viable cause of action, however, no preliminary injunction is appropriate. *E.g.*, *Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846, 859-64 (4th Cir. 2001) (holding that Safety-Kleen failed to present a substantial question on its various causes of action; therefore, a preliminary injunction was inappropriate even though the parties agreed that "Safety-Kleen will suffer decidedly more harm than [the opposing party] if a preliminary injunction is denied."); *Mom N Pops, Inc. v. City of Charlotte*, No. 97-2359, 1998 U.S. App. LEXIS 20272 at *17-20 (4th Cir. 1998) (affirming the denial of a preliminary injunction on the basis that the movant lacked standing to challenge a zoning ordinance for vagueness or overbreadth) (unpub.); *Regal Coal, Inc. v. LaRosa*, No. 2:03CV90, 2004 U.S. Dist. LEXIS 26846

5

at *17-21 (N.D.W. Va. Aug. 27, 2004) (denying a motion for a preliminary injunction, in part, because the movants did not have standing to raise the relevant legal issues).

In this case, the Foundation and Mr. Stone assert that Ms. Ball is liable to the Debtor's bankruptcy estate on a state-law fraudulent transfer cause of action, and the USTE asserts that Ms. Ball is liable to the Debtor's bankruptcy estate on a theory of unjust enrichment. Both of those causes of action are property of the Debtor's bankruptcy estate, and the Debtor is the proper party to bring those causes of action – not the Foundation, Mr. Stone, or the USTE.

In a similar case, *Scott v. National Century Fin. Enters. (In re Baltimore Emergency Serv. II, Corp.)*, 432 F.3d 557 (4th Cir. 2005), the Court of Appeals for the Fourth Circuit vacated a preliminary injunction issued by the bankruptcy court on a cause of action asserted by the debtor's creditors against a former insider of the debtor. The creditors alleged that the former insider was undermining the debtor's Chapter 11 reorganization efforts and asserted various state-law tort and contract claims, as well as claims under the Bankruptcy Code. *Id.* at 559. In determining that the creditors had standing to bring those causes of action, the bankruptcy court reasoned that, as creditors, they were parties-in-interest as to the outcome of the litigation. *Id.* In reversing the determination of the bankruptcy court, the Fourth Circuit concluded that the creditors lacked standing to assert the stated causes of action because those causes of action were property of the bankruptcy estate; therefore, the imposition of a preliminary injunction was inappropriate. *Id.* at 560. The Fourth Circuit further admonished:

> As we have repeatedly stated, " 'preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances.' " A court greatly exceeds its power, and may effect grave harm, by granting such a remedy to a party that has not demonstrated standing to request it.

*Id.* at 563 (citations omitted).

No dispute exists that the cause of action stated by the Foundation and Mr. Stone for a state-law fraudulent conveyance, and the cause of action stated by the USTE for unjust enrichment, are property of the Debtor's bankruptcy estate. Section 541(a) of the Bankruptcy Code defines property of the estate, to include, inter alia, all legal and equitable interests of the debtor. 11 U.S.C. § 541(a)(1). *See also United States v. Whiting Pools*, 462 U.S. 198, 204-05 (1983) (stating that "§ 541(a)(1)'s scope is

6

broad."); *Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A v. Alvarez (In re Alvarez)*, 224 F.3d 1273, 1279-80 (11th Cir. 2000) (holding that a legal malpractice claim is property of the estate); *Polis v. Getaways, Inc. (In re Polis)*, 217 F.3d 899, 902 (7th Cir. 2000) ("Legal claims are assets whether or not they are assignable, especially when they are claims for money . . . ."). The trustee, or debtor-in-possession, has the exclusive right to exercise these causes of action. *E.g.*, *iXL Enters. v. GE Capital Corp.*, 167 Fed. Appx. 824, 827 n.2 (2d Cir. 2006) ("Under Section 541 of the Bankruptcy Code, the cause of action to recover short-swing profits became the exclusive 'property' of the debtor-in-possession (i.e., iXL) at the moment iXL filed for bankruptcy protection. At that moment, Rosenberg, as one of iXL's creditors, was stripped of all his rights to that property."); *Baltimore Emergency Serv. II, Corp.*, 432 F.3d at 560 (holding that only the debtor in possession had the authority to bring causes of action against an insider when those causes of action were property of the bankruptcy estate).

Here, neither the Foundation, Mr. Stone, nor the USTE have petitioned the court for derivative standing to pursue the stated causes of action, and it would be inappropriate for the court to address the merits of such standing in the absence of a request.[3] Indeed, no adversary proceeding has been initiated by any party against Ms. Ball on either a fraudulent transfer cause of action or one for unjust enrichment. Instead, all the parties have done is to submit statements of what their claim would be against Ms. Ball if they were to file a complaint. Without more this court's hands are tied. Following the admonishment of the Fourth Circuit in *Baltimore Emergency Serv. II, Corp.*, this court cannot grant the extraordinary remedy of a preliminary injunction in favor of parties who have no standing to bring the contemplated causes of action against Ms. Ball. The court readily recognizes the considerable efforts that all parties to this case have devoted to litigating and briefing the respective factual and legal issues pertaining to the distribution of the Condominium sale proceeds. Nevertheless, regardless of the relative strengths and

---

[3] In the court's January 31, 2007 Memorandum Opinion, the court specifically directed the moving parties "to, <u>at a minimum</u>, outline the possible causes of action against Ms. Ball, the elements of that cause of action, and why or why not those parties believe that they could be successful on the merits of that litigation <u>should they be allowed to pursue such causes of action in lieu of the Debtor.</u>" (emphasis added). While the movants provided an outline of the possible causes of action against Ms. Ball and spent a considerable amount of effort in arguing their probable success on the merits, no party addressed why that party should be allowed to pursue any cause of action in lieu of the Debtor.

7

weaknesses of the arguments of the parties, this court is left with no choice but to deny relief to the moving parties by way of a preliminary injunction.

### III. CONCLUSION

For the above stated reasons, the court will deny the motions for a preliminary injunction filed by the Foundation, Mr. Stone, and the USTE, and will approve the Debtor's motion to distribute the proceeds from the sale of the Condominium. A separate order is attached pursuant to Fed. R. Bankr. P. 9021.