Order Entered.

*Patrick M. Flatley*
Patrick M. Flatley
United States Bankruptcy Judge
Dated: Friday, May 23, 2008 2:16:47 PM

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOHN PATRICK BALL | ) | CASE NO. 06-1002 |
| | ) | |
| Debtor. | ) | Chapter 11 |

## MEMORANDUM OPINION

John Patrick Ball, an individual Chapter 11 debtor (the "Debtor"), requests that the court grant him a discharge, close his case, and enter an injunction. The Debtor contends that all payments under his confirmed Chapter 11 plan (the "Plan") have been made.

The members of Class 4 object to the motion on the grounds that they have not been paid in full under the Plan. The members of Class 4 are the West Virginia University Foundation (the "Foundation"), and Ward D. Stone, Jr., the Administrator of the Estates of Vivan Davis Michael, Gladys G. Davis, and Earl L. Elmore (the "Administrator"). The Debtor asserts that Class 4 creditors have been paid on the basis that he has executed a promissory note and accompanying security interest in their favor. The Foundation and the Administrator contend that a cash payment is required under the Plan.

For the reasons stated herein, the court will deny the Debtor's motion.

### I. BACKGROUND

In § 3.5 of the Plan, as confirmed by the court on December 20, 2007, the Foundation and the Administrator are to receive $1,800,000 from distribution from both non-estate assets and from the so-called "Asset Pool," which consisted of about four items of estate property. The Debtor has already liquidated the "Asset Pool." On January 21, 2008, the Debtor reported that the liquidation

1

generated $1,361,850 in receipts, and of that amount $419,163 was disbursed to the Foundation, and $632,914 was disbursed to the Administrator. Subsequently, the Debtor distributed an additional $20,515 to the Foundation and the Administrator; thus, about $727,408 remains to be paid to Class 4 creditors under the Plan.

By agreement, the Debtor, and his non-filing spouse, Anita Ball, granted a security interest to the Foundation and the Administrator in a Florida condominium. The condominium is partly owned by Ms. Ball, but she agreed to pay over her interest in the property to satisfy the amount due under the Plan. The condominium is the non-estate asset referred to in the Plan. According to the Debtor, there is a first mortgage owed to AmSouth Bank in the approximate amount of $200,000, and the condominium is currently being marketed for about $950,000. It is unclear at this time whether or not proceeds from the sale of the condominium will be sufficient to pay the total amount owed to Class 4 creditors after deducting the costs of sale.

Section 4.7 of the Plan provided that the condominium was to be sold no later than March 31, 2008. This has not happened. The condominium, however, is listed for sale through a realtor and is being actively marketed.

In connection with the granting of a security interest in the condominium, the Debtor and Ms. Ball also executed a balloon payment promissory note to the Foundation and the Administrator in the amount of $800,000. No interest is due on the note until March 31, 2008, at which time the note is payable in full. Based on the failure to sell the condominium by that date, the Foundation and the Administrator have the option to declare the entire balance of the note immediately due, and the note is to bear interest from March 31, 2008, at 10% per annum.

## II. DISCUSSION

The Debtor contends that his case has been fully administered because all the assets required to be liquidated by the Plan (except the condominium) have been liquidated and the proceeds have been distributed to creditors as required by the Plan. The Debtor asserts that the note he and Ms. Ball executed to the Foundation and the Administrator is sufficient to constitute payment to them under the terms of the Plan. Consequently, the Debtor argues, no impediment exists to the entry of a discharge and the closing of his case.

Section 350(a) of the Bankruptcy Code requires the court to close a case after the estate is fully administered. 11 U.S.C. § 350(a). A Chapter 11 case cannot be deemed fully administered

until sometime after the plan is "substantially consummated."

"Substantial consummation" is defined in 11 U.S.C. § 1101(2) to mean "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan."

Fed. R. Bankr. P. 3022 governs the closing of a Chapter 11 case. It states that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." *Id.* By drafting such loose language, "Congress intended that the bankruptcy courts set the procedure for the closing of a case under title 11." 3 *Collier on Bankruptcy* ¶ 350.02[2] (Alan N. Resnick and Henry J. Summer, eds., 15th ed. rev. 2008).

The 1991 Advisory Committee Note to Rule 3022 lists non-exclusive factors to be considered in determining whether the estate has been fully administered:

> (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or the successor of the debtor under the plan has assumed the business of the management of the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.

Fed. R. Bankr. P. 3022, Advisory Committee Note.

These provisions – which preexisted the Chapter 11 changes made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") to individual cases like this one – were aimed at closing Chapter 11 cases sooner rather than later, and payments under the plan did not have to be completed before the case was closed. Fed. R. Bankr. P. 3022, Advisory Committee Note; *see also In re Mold Makers, Inc.*, 124 B.R. 766, 768 (Bankr. N.D. Ill. 1990) (stating that cases may be closed before all that is called for under the plan has occurred). Thus, in a non-individual case, substantial consummation generally means the case is fully administered and can be closed. Robert J. Landry III, *Individual Chapter 11 Cases After BAPCPA: Can You Still Close the Case Early?* 25-6 A.B.I. J. 10, 10 (Aug. 2006); *cf. In re SLI, Inc.*, No. 02-12608, 2005 Bankr. LEXIS 1322

at *7 (Bankr. D. Del. June 24, 2005) (noting that substantial consummation and full administration are not necessarily synonymous), *aff'd*, No. 04-4231, 2006 U.S. App. LEXIS 5188 (3d Cir. March 1, 2006).

After the passage of BAPCPA, however, the preexisting rules allowing for an early Chapter 11 case closing are in conflict with several provisions of the Bankruptcy Code governing the administration of an individual's case. For example: (1) property of the estate is now defined in 11 U.S.C. § 1115 to include the post-petition earnings of a debtor; (2) the debtor is explicitly allowed by § 1123(a)(8) to fund a plan from the debtor's post-petition earnings; (3) the holder of an unsecured claim now has the right under § 1127(e) to seek modification of a confirmed plan; (4) the debtor is subject to the best efforts test in § 1129(a)(15); and (5) pursuant to § 1141(d)(5), no discharge may be entered until all payments have been made under the plan.

These changes mean that individual Chapter 11 cases are now more akin to the administration of cases under Chapter 13 than to the Chapter 11 reorganization of non-individual debtors. Of course, Chapter 13 cases are not closed until after all plan payments have been made and a discharge is entered. As stated by one commentator, these changes "call into question whether closing individual chapter 11 cases 'sooner rather than later' is intended post-BAPCPA." Landry, *supra*, 25-6 A.B.I. J. at 10. At this time, guidance on this issue is left up to the courts. *Id.* at 60.

Here, the Debtor has substantially consummated the plan. Namely, substantially all of the property in the Plan has been liquidated and the proceeds have been distributed pursuant to the Plan. To the court's knowledge, the only item of property that has yet to be liquidated is the condominium. The court does not believe, however, that this case has been fully administered because: (A) all payments have not been completed under the Plan, and (B) the Debtor is not yet entitled to a discharge.

**A.    All Plan Payments Have Not Been Completed**

Reviewing the terms of the Plan, the court is convinced that payment to Class 4 creditors is to be in cash – not by a promissory note. The court reaches this conclusion for the following four reasons.

First, § 4.7 of the Plan states that – after the Asset Pool is liquidated – "the remainder of the $1,800,000 owed to the members of Class 4 shall be paid from non-Estate assets . . . no later than March 31, 2008." The "non-Estate asset" is, of course, the condominium and its anticipated

4

liquidation. Being paid out of the liquidation of the condominium and being paid pursuant to a promissory note are distinctly different.

Second, pending that anticipated payment, the Debtor and his non-filing spouse granted a security interest in the Florida Condo as the "remainder payment"under the Plan. The remainder payment was not the Note, which only evidences the "remainder payment."

Third, a December 12, 2007 letter written by the Debtor and Ms. Ball to the Foundation and the Administrator "reaffirmed [their] joint commitment to the making of the remainder payment," and stated that "the sums necessary to make that payment are to be generated by the sale of a condominium in Florida."

And fourth, the Plan never specifically calls for payment to Class 4 creditors through the execution of a note.

Based on these four reasons, the court concludes that the execution of the promissory note is not payment to Class 4 creditors. It is axiomatic that the granting of a note is not the payment of a debt – it is only the promise to pay a debt. Under the Plan, payment to Class 4 creditors is to be in cash, which is to be generated from the sale of the condominium. Consequently, all payments have not been completed under the Plan and assets still exist to administer pursuant to the Plan.

**B.     The Debtor is Not Yet Entitled to a Discharge**

Until all payments are made under the plan, the Debtor is not entitled to a discharge. 11 U.S.C. § 1141(d)(5)(A).

Of course, § 1141(d)(5)(A) allows the court to enter a discharge before all payments are completed under the plan "for cause." In this case, the only cause stated by the Debtor is his desire to avoid the payment of the United States Trustee's quarterly fees, and presumably the administrative burden of having to file post-confirmation reports.

Under the circumstances of this case, however, the court does not believe that this is sufficient cause to enter a premature discharge. All parties anticipate the condominium selling in the near future, and this does not appear to be a case where the post-confirmation administration will be lengthy. The Debtor only confirmed the Plan six months ago. Payment of Chapter 11 quarterly fees is simply the cost of doing business under Chapter 11. *See, e.g.*, *In re SLI, Inc.*, 2005 Bankr. LEXIS 1322 at *7-8 (denying a motion to close the case when the principal motivation was the avoidance of the United States Trustee's quarterly Chapter 11 fee). Since this case is not far

5

removed from confirmation and the Plan itself contemplates a relatively short life span, based upon the orderly liquidation of assets, the court is not persuaded that the Debtor is entitled to relief from his obligations to pay the quarterly fees at the present time. The court leaves for another day the issue of whether such an accommodation would be appropriate in an individual Chapter 11 case of more significant duration, such as a five-year plan required under § 1129(a)(15).[1]

## CONCLUSION

Because (1) all payments have not been made under the plan, (2) assets still exist to be administered, and (3) because the court finds that the Debtor is not yet entitled to the entry of a discharge, the court will deny the Debtor's motion.

A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

---

[1] Debtors are cautioned in this regard in that the payment of post-confirmation quarterly fees over the length of a plan of significant duration may impact feasibility. Thus, the time to address the issue of the application and impact of such fees is at the time of the formulation of the disclosure statement and plan.